## BONNIE BLAND V. THE STATE.

No. 23995. Delivered May 26, 1948.

*Connor W. Patman,* of Texarkana, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

#### ON STATE'S MOTION FOR REHEARING.

KRUEGER, Judge.

The original opinion heretofore delivered on April 7, 1948, is hereby withdrawn and the following substituted therefor:

Appellant was given a term of three years in the penitentiary for an assault with intent to murder without malice, and he appeals.

The facts are confusing in that the State's witnesses show an unprovoked attack by appellant and his brother upon Mr. Hanes, the injured party, and Mr. Shelton, while the defense shows an unprovoked attack by the two above-mentioned State's witnesses upon appellant and his brother, Joe Bland.

On Sunday afternoon, May 18, 1947, Mr. Shelton and his family were in their car on a public highway. While they were passing a negro settlement near a beer joint, appellant backed

out across the road in his car and collided with that of Mr. Shelton, the cars remaining stuck together. Appellant's brother, Joe Bland, came from across the road while efforts were being made to extricate the cars from their entangled condition. Mr. Thurman Hanes, who was traveling about 100 yards behind Mr. Shelton, came up and they finally got the cars apart. Some argument ensued between the parties. The State's witnesses testified that Joe Bland struck Mr. Hanes during the argument and was then knocked down by Hanes, whereupon appellant, who was still in the car, got out and struck Hanes in the back twice with a knife. Blood began to flow therefrom, and the fight then seemed to have become general. There were cuts made on appellant, his brother Joe, and his sister Helen. Mrs. Shelton was struck by a rock evidently thrown by appellant. Joe Bland finally possessed himself of a gun or rifle, and after some-cursing, ordered all the white people to get in their cars. He then took a club or fence post and shattered the windshield of Mr. Shelton's car. The parties then separated and left the scene.

It was contended by the State that the appellant and his brother, Joe Bland, had been drinking and that they did all the cutting; that their sister, Helen, was stabbed by appellant when she threw her arms about him and tried to stop the fight. However, the negroes claimed that they had no knives and that Mr. Hanes was cut by Mr. Shelton through excitement and mistake. It was a rather difficult matter for the jury to ascertain the truth in this mess of contradiction, but since they are the exclusive judges of such facts, we do not feel called upon to disturb their finding herein.

Appellant has presented four bills of exception.

Bill of Exceptions No. 1 complains of the trial court's action in overruling appellant's second motion for a continuance on account of the absence of Josie Edwards, Walter Edwards, O. M. Knight, Jr., and Dr. O. W. McPeters, all residents of Bowie County. It was shown therein that appellant had subpoenas issued for all of said witnesses and that they were summoned by the sheriff about 30 days prior to this cause coming up for trial; that on the day before this cause was called for trial, appellant's attorney drove by the residence of Josie and Walter Edwards and ascertained for the first time the fact that they had departed for Scandinavia, State of Wisconsin, and they did not appear at the trial hereof. The witness, C. M. Knight, Jr., although summoned by the sheriff, failed to appear. However, the witness, O. W. McPeters, did appear and testify.

It was alleged in such motion that Josie and Walter Edwards were not related in any way to appellant; that on the occasion in question they were sitting in a truck about 30 yards away down the road from the scene of the trouble and saw the whole transaction; that Mr. Hanes and Mr. Shelton were the aggressors therein; and they attacked appellant and his brother, cutting and stabbing appellant and his brother and their sister, Helen Hemphill, both Mr. Hanes and Mr. Shelton using knives in the difficulty.

O. M. Knight, Jr., was seasonably summoned as a witness but did not appear at the trial. On the motion for a new trial, it is shown that he left in search of a job the day prior to the trial and did not return until the day after the trial. His testimony would only be impeaching as to the facts testified to by the State's witnesses that such witnesses had no knives in their possession. The testimony of the witnesses, Josie and Walter Edwards, was material and came from those not related to the transaction. No affidavit was present in the motion for a new trial, they presumably being in Wisconsin, but appellant expressed a desire to be granted a continuance in order to take their deposition to be used upon the trial of the case. Not only were these witnesses summoned in proper time, but appellant also had an attachment issued for them, which attachment was not executed because they were not found.

We are at a loss to see what else appellant's attorneys could have done other than to issue subpoenas for the witnesses, have them served, go by to notify such witnesses of the approaching trial, and finding them gone from their accustomed abode, to have an attachment issued for them. It is alleged that the Edwards negroes had been run off by certain lawless persons, but no proof of such is present in the record. It was merely shown that they were in Scandinavia, Wisconsin, and that appellant desired a continuance in order that their deposition might have been taken.

The record is replete with testimony of the white people that they possessed no knives nor used any knives of any kind in the difficulty in which both white and colored people received various cuts with a knife or a sharp instrument. To the opposite effect is the testimony of the negroes, all kin, either by blood or marriage, to appellant, that several negroes were cut, including the appellant's sister, and all claiming that no negro had a knife but that they were all cut by knives in the hands of Mr. Shelton and Mr. Hanes. That the testimony of the Edwards witnesses

should not be held cumulative is shown by the following quotation from the case of Henson v. State, 200 S. W. (2d.) 1007, as follows:

"For the State the witnesses who testified to the immediate facts of the shooting were Box, his wife and daughter, and for appellant, himself and wife, all interested witnesses. This being true, it is appellant's contention that the evidence of McMullen should not be held cumulative, and that to so hold would be in conflict with Taulbee v. State, 133 Tex. Cr. R. 530, 113 S. W. (2d) 182; Abramson v. State, 120 Tex. Cr. R. 11, 47 S. W. (2d) 303; Whatley v. State, 117 Tex. Cr. R. 447, 36 S. W. (2d) 751. We think appellant's position is supported by the authorities cited."

While the testimony of the two desired witnesses in the instant case would be but cumulative of the remaining negro witnesses, nevertheless, it is contended that they are disinterested witnesses and the only witnesses not related by blood or marriage to appellant, and under the above holding of this court, they should have been heard.

We are of the opinion that the motion for a continuance should have been granted and appellant given an opportunity to have at least taken their deposition.

Thus believing, the State's motion for rehearing is overruled, the former opinion herein is withdrawn, and the judgment is reversed and the cause remanded.

Opinion approved by the Court.